The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Theresa B. Stephenson and the briefs and oral arguments before the Full Commission. The appealing party has shown good ground to reconsider the evidence in this matter. Having reconsidered the evidence of record, the Full Commission reverses the Deputy Commissioner's denial of benefits and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing, and following, and in a Pre-Trial Agreement, as:
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission and are bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between plaintiff and defendant-employer on 8 April 1991.
3. The City of Winston-Salem is self-insured.
4. Plaintiff's average weekly wage of $340.80 per week yields a compensation rate of $227.21 per week.
5. Plaintiff entered into a Form 21 Agreement with defendant-employer on 21 April 1991, approved by the Commission 20 May 1991. Pursuant to this agreement plaintiff was paid temporary total disability from 9 April 1991 through 4 August 1991 at his compensation rate of $227.21.
6. Plaintiff and defendant-employer executed a Form 26 Supplemental Memorandum of Agreement as to Payment of Compensation on 1 August 1991, approved by the Commission 30 August 1991. Plaintiff received payment for a ten percent (10%) permanent partial disability to his back, 30 weeks at his compensation rate of $227.21.
7. On 15 March 1994 plaintiff and defendant-employer entered into a Supplemental Memorandum of Agreement as to Payment of Compensation, approved by the Commission 23 March 1994. Pursuant to the terms of this agreement, plaintiff was compensated for thirty (30) weeks at his compensation rate of $227.21 per week beginning 15 February 1994, for an additional ten percent (10%) permanent partial disability rating to his back. Plaintiff now seeks to set aside this agreement. This agreement is admitted into evidence as Stipulated Exhibit #1.
8. A one page letter from the Personnel Supervisor at defendant-employer to plaintiff, dated 14 April 1991, is admitted as Stipulated Exhibit #2.
9. The Pre-Trial Agreement between the parties is admitted as Stipulated Exhibit #3.
10. The medical records of plaintiff from Dr. Brown, Dr. Jones and Dr. De la Torre concerning this claim are received into evidence.
11. The issues to be determined are whether the Form 26, approved 23 March 1994, should be set aside; whether plaintiff has suffered a change of condition; and what additional benefits, if any, is plaintiff entitled to.
 *********** RULINGS ON EVIDENTIARY MATTERS
The objections contained within the deposition of Kathryn Ann Krupa is ruled upon in accordance with the applicable provisions of the law and the Opinion and Award in this case and the testimony of Rocky Schuyler at the hearing is ruled upon in accordance with the applicable provisions of the law and the Opinion and Award in this case.
 ***********
Based upon all of the competent evidence adduced in this case and reasonable inferences drawn therefor, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. On 8 April 1991 plaintiff was a 31 year old male employed by defendant-employer as a crew leader with defendant-employer.
2. On 8 April 1991 plaintiff suffered a compensable injury to his back while lifting a fifty (50) pound bag of grass seed from his truck.
3. Conservative treatment was unsuccessful; as a result of plaintiff's compensable injury, he underwent a laminectomy in April, 1991, performed by Dr. De la Torre.
4. Plaintiff received temporary total disability compensation from 9 April 1991 thorough 4 August 1991, pursuant to the Form 21 Agreement approved 20 May 1991.
5. Plaintiff first reached maximum medical improvement in August, 1991 and received a ten percent (10%) permanent partial disability to his back. Plaintiff was compensated for this disability pursuant to a Form 26 Agreement approved by the Commission 30 August 1991.
6. Plaintiff returned to work for defendant-employer in a modified duty capacity. Plaintiff again went out of work and underwent surgery on 20 September 1993, performed by Dr. William Brown. This surgery freed up nerve roots and scar tissue which had formed as the result of the previous surgery.
7. Plaintiff received temporary total disability for that time period he was unable to earn wages. Plaintiff again reached maximum improvement in February, 1994 and received an additional ten percent (10%) permanent partial disability rating on 15 February 1994.
8. Plaintiff was compensated for this additional ten percent (10%) rating pursuant to a Form 26 Agreement, approved by the Commission 23 March 1994. At the time plaintiff signed this agreement he was on light duty with the City of Winston-Salem and reasonably believed his employment with the City would continue. However, within a month of the Commission's approval of the Form 26, Plaintiff was notified that his temporary light duty job would soon end and that he would have to take medical retirement if a suitable permanent job could not be found for him among the City's available jobs. He was forced to take medical retirement shortly thereafter. Under these circumstances, the Commission's approval of the Form 26 agreement was improvident. There is no showing on this record that Plaintiff made a knowing decision between collecting his disability rating or collecting continuing compensation, which was the more beneficial of the two remedies available to him under the law. The plaintiff's testimony that if had known of the two different remedies available he would have chosen the more beneficial one is eminently credible. A person would have to be bereft of sense to chose otherwise, and the Deputy Commissioner's finding of no credibility is therefore set aside by the Commission.
9. Other testimony in the record tended to show that the City either has an unwritten policy of placing its injured workers on temporary light duty until they are rated and have signed a Form 26 agreeing to accept the rating and then telling them the temporary job has expired and no permanent job is available or else has structured its personnel, disability and workers compensation divisions such that its injured workers are not fully appraised of their rights.
10. Kathryn Krupa, the Workers' Compensation Analyst for the defendant-employer dealt personally with plaintiff with respect to the March, 1994 Form 26. Ms. Krupa testified that her practice was to go over the agreement with the injured worker and explain that he had two (2) years from the last payment of compensation to claim a change of condition or additional medical expenses. However, there was no evidence the injured worker was told that he had an option of not accepting the Form 26 compensation and instead obtain continuing disability payments in the event he was not provided permanent employment when his temporary job expired.
11. The greater weight of the evidence supports a finding of misrepresentation with respect to the Form 26 Agreement approved by the Commission 23 March 1994 in that the injured worker was not given sufficient information with which to make an intelligent decision with respect to either acceptance of the partial disability rating or rejection of the rating and acceptance of continuing disability pay.
12. When plaintiff was released by Dr. William Brown in February, 1994, he was released to work under restrictions of lifting twenty (20) pounds on a occasional basis, ten (10) pounds on a frequent basis and not lifting any weight on a constant basis, plaintiff returned to work for defendant-employer in February, 1994 in a light-work capacity doing janitorial work consisting of sweeping and mopping in the coliseum at the same or greater wages than he had earned prior to his compensable injury. However, this job was not a real job available in the local economy.
13. Plaintiff worked in this janitorial capacity until 31 May 1994. Plaintiff was informed by defendant-employer, by letter dated 14 April 1994, that the Coliseum job would run out shortly and they needed to find alternative employment, or pursue medical retirement.
14. Plaintiff underwent a CT myelogram to his back on 19 October 1994 which revealed disc degeneration which was a direct consequence of the compensable injury.
15. After plaintiff was forced into medical retirement in June 1994, he began to "hang out" at his mother's restaurant, the City Corner Grill, located in King, North Carolina. Although he does not do any of the following on a regular basis, from time-to-time he prepares short order food and sandwiches, stands behind the counter, makes change at the cash register, and sits and laughs and socializes with friends at the restaurant. Plaintiff does not receive any monetary wages for the few things he does from time-to-time at his mother's restaurant; however, he receives free food. The Full Commission was in as good a position as the Deputy Commissioner to determine credibility on this point since the evidence was largely a video tape and a surveillance report. The live testimony of the investigator added nothing useful in addition to the video tape or surveillance report.
16. Plaintiff has not attempted to seek any employment besides helping at his mother's restaurant, since he was forced into medical retirement the end of May, 1994. Plaintiff did not collect a salary from his mother for hanging out and lending a hand from time-to-time at the restaurant and this non-work is illustrative of plaintiff's lack of earning capacity. Additionally, plaintiff is entitled to the presumption that his disability is continuing since he has never earned his pre-injury wages at a real job since attaining maximum medical improvement in February, 1994.
 ***********
Based upon the findings of fact the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. The Industrial Commission's approval of the second Form 26 in this case on 23 March 1994 under the circumstances of this case was improvidently given and should be vacated.
2. Under the circumstances of this case the second Form 26 in this case was procured by the employer through what amounts to misrepresentation and should be set aside. N.C. Gen. Stat. §97-17.
3. Plaintiff's disability is continuing and he has been unable to earn any wages since forced into medical retirement. Plaintiff is entitled to continuing compensation so long as he remains unable to earn his pre injury wages.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. The Full Commission vacates the Commission's approval on 23 March 1994 of the second Form 26 in this case as having been improvidently entered under the facts and circumstances of this case.
2. Additionally, Plaintiff's motion to set aside the Form 26 Agreement, approved by the Commission 23 March 1994, IS GRANTED, based on misrepresentation.
2. Plaintiff is entitled to weekly compensation of $227.21 per week from February 1994 to the present and continuing until he is gainfully employed in a real job in the real economy or until further orders of the Commission.
3. Defendant is entitled to credit for the 30 weeks of compensation paid pursuant to the Form 26 Agreement improvidently approved by the Commission on 23 March 1994.
4. Compensation due hereunder that has already accrued shall be paid in a lump sum, with interest at 8 per cent per year from 10 September 1997 until paid, subject to the attorney fees hereafter awarded. Reasonable attorney fees are found to be 25% of the Compensation awarded. Accordingly, Defendant shall pay 75% of the lump sum to Plaintiff and 25% to Plaintiff's attorney. Thereafter, every fourth check shall be payable directly to Plaintiff's attorney.
5. The Defendant shall pay the costs.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/_____________ CHRISTOPHER SCOTT COMMISSIONER
S/_____________ DIANNE C. SELLERS COMMISSIONER